IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CRIMINAL NO. 4:18-CR-164-1 |
| | § | |
| GARY SPANGLER | § | |

DEFENDANT'S BRIEF AND MEMORANDUM OF LAW CONCERNING THE
APPLICATION OF DIRECT SUPERVISION AS TO "INCIDENT TO" SERVICES OF
PHYSICIANS

TO THE HONORABLE JUDGE ROSENTHAL:

COMES NOW GARY SPANGLER, by and through his attorneys of record, William McMurrey and Wendell A. Odom, Jr., and submits the law and this memorandum concerning the issue stated below:

Issue

Under Medicare can a doctor bill under his National Provider Identifier (NPI) if that doctor is not present at the time of the procedure that is being billed, when the procedure is designated as "direct supervision" and the services are provided "incident to" the services of a doctor?

The General Law

42 CFR § 410.26(a)(2) states:

Direct supervision means the level of supervision by the physician (or other practitioner) of auxiliary personnel as defined in § 410.32(b)(3)(ii).

42 CFR § 410.26(b)(5) states:

In general (emphasis added), services and supplies must be furnished under the direct supervision of the physician (or other practitioner). Designated care management services can be furnished under general supervision of the physician (or other practitioner) when these services or supplies are provided incident to the services of a physician (or other practitioner). The physician (or other practitioner) supervising the auxiliary personnel need not be the same physician (or other

practitioner) who is treating the patient more broadly. However, only the supervising physician (or other practitioner) may bill Medicare for incident to services.

**42 CFR § 410.32(b)(3)(ii) states:**

Direct supervision in the office setting means the physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed.

Medical providers, who are authorized to bill for services rendered to Medicare, are issued their own National Provider Identifier (NPI). Different providers have different allowables, which are reimbursed from Medicare. For instance, the allowable reimbursements of non-physician practitioners are 15% lower than those of physicians. The government contends that Dr. Spangler must be in direct supervision, i.e., "present," during the procedures at issue in this case in order to bill under his NPI. While that is the general "incident to" rule, it is not correct in this case.

### Modified Rules for Underserved Areas

Medicare, in order to ensure quality patient care for all and to protect the Medicare Trust Fund, has provided for certain exceptions to the "incident to" rule. The *Medicare Integrity Manual*, established by the Center for Medicare and Medicaid Services (CMS), sets out the applications of certain modifications to the CFR and provides a limited number of legally acceptable exceptions to direct supervision as applied to the "incident to" rule. All providers are required to follow these modified rules nationwide.

The *Medicare Integrity Manual*, **Chapter 15, § 60.4** explains the parameters of these modified rules in detail as follows:

**A. When Covered**

In some medically underserved areas there are only a few physicians available to provide services over broad geographic areas or to a large patient

population. The lack of medical personnel (and, in many instances, a home health agency servicing the area) significantly reduces the availability of certain medical services to homebound patients. Some physicians and physician-directed clinics, therefore, call upon nurses and other paramedical personnel to provide these services under general (rather than direct) supervision. In some areas, such practice has tended to become the accepted method of delivery of these services.

The Senate Finance Committee Report accompanying the 1972 Amendments to the Act recommended that the direct supervision requirement of the "incident to" provision be modified to provide coverage for services provided in this manner.

According, to permit coverage of certain of these services, the direct supervision criterion in §60.2 above is **not** applicable to individual or intermittent services outline in this section when they are preformed by personnel meeting any pertinent State requirements (e.g., a nurse, technician, or physician extender) and where the criteria listed below also are met:

1. The patient is homebound; i.e., confined to his or her home (see §60.4.1 for the definition of a "homebound" patient and §110.1(D) for the definition of patient's "place of residence."

2. The service is an integral part of the physician's service to the patient (the patient must be one the physician is treating), and is performed under general physician supervision by employees of the physician or clinic. General supervision means that the physician need not be physically present at the patient's place of residence when the service is performed; however, the service must be performed under his or her overall supervision and control.

The physician orders the service(s) to be performed, and contact is maintained between the nurse or other employee and the physician, e.g., the employee contacts the physician directedly if additional instructions are needed, and the physician must retain professional responsibility for the service. All other "incident to" requirements must be met (see §§§60-60.4).

3. The services are included in the physician's/ clinic's bill, and the physician or clinic has incurred an expense for them (see §60.2).

4. The services of the paramedical are required for the patient's care; that is, they are reasonable and necessary as defined in the Medicare Benefit Policy Manual, Chapter 16, "General Exclusions from Coverage," §20.

5. When the service can be furnished by an HHA in the local area, it **cannot** be covered when furnished by a physician/ clinic to a homebound patient under this provision, except as described in §60.4.C.

**B. Covered Services**

Where the requirements in §60.4.A are met, the direct supervision requirement in §60.2 is not applicable to the following services:

1. Injections;

2. Venipuncture;

3. EKGs;

4. Therapeutic exercises;

5. Insertion and sterile irrigation of a catheter

6. Changing of catheters and collection of catheterized specimen for urinalysis and culture;

7. Dressing changes, e.g., the most common chronic conditions that may need dressing changes are decubitus care and gangrene;

8.  Replacement and/ or insertion of nasogastric tubes;

9. Removal of fecal impaction, including enemas;

10. Sputum collection for gram stain and culture, and possible acid-fast and/ or fungal stain and culture;

11. Paraffin bath therapy for hands and/ or feet in rheumatoid arthritis or osteoarthritis;

12. Teaching and training the patient for:

    a. The care of colostomy and ileostomy;

    b. The care of permanent tracheostomy;

    c. Testing urine and care of the feet (diabetic patients only); and

    d. Blood pressure monitoring.

*Medicare Integrity Manual*, **Chapter 15, § 60.4** (Rev. 1, October 1, 2013) (Emphasis not added).

### Argument

As is almost always the case, any analysis of the law can only be complete when applied to specific facts. The law allows modifications to the rule of direct supervision. A recognized exception to the general rule is applicable in this case. Because Dr. Spangler practices medicine in an "underserved area" and his patients are "homebound," as explained above, he does not need to provide direct supervision.

Dr. Spangler's clientele is primarily older and often in a hospice, a home, or a clinic for the elderly. He provides services to patients in an area that is lacking in medical doctors. Dr. Spangler received from the Texas Department of State Health Services, a designation, on December 8, 2015, informing Dr. Spangler that his practice, Bay Area House Calls is a site serving medically underserved populations. (See Exhibit A). Additionally, a simple review of authorized websites shows underserved communities nationwide. (See, for example, https://bhw.hrsa.gov/shortage-designation/muap or https://data.hrsa.gov/tools/shortage-area/mua-find). Dr. Spangler serves an underserved community. Furthermore, a review of Dr. Spangler's medical charts shows he was treating homebound patients. But the modifications provided by CMS in the *Medical Integrity Manual*, Dr. Spangler's patients would not receive necessary services, ending up in emergency rooms, and requiring hospital stays that would eventually drive up costs to the Medicare Trust Fund. As stated in the *Medicare Integrity Manual*, "[i]n some areas, such practice has tended to become the accepted method of delivery of these services." See, *Medicare Integrity Manual*, Chapter 15, § 60.4(A).

Under the modifications to the rules referenced, Dr. Spangler does not need to be present in order to bill the appropriate clients under his NPI.

Respectfully submitted,

*/s/ Wendell A. Odom, Jr.*
**WENDELL A. ODOM, JR.**
**Texas State Bar #15208500**
**Federal Bar # 0947**
**440 Louisiana Street, Suite 200**
**Houston, TX 77002**
**(713) 223-5575**
**(713) 224-2815 (FAX)**

*/s/ William McMurrey*
**WILLIAM McMURREY**
**Texas State Bar #13811100**
**908 Chestnut**
**Bastrop, TX 78602**
**(214) 909-6226**

*/s/ Neal Davis, III*
**NEAL DAVIS, III**
**Texas State Bar #24038531**
**Federal Bar #706329**
**440 Louisiana Street, Suite 200**
**Houston, TX 77002**
**(713) 223-5575**
**(713) 224-2815 (FAX)**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Brief and Memorandum of Law Concerning the Application of Direct Supervision as to "Incident To" Services of Physicians** was delivered via electronic filing to the Assistant United States Attorney in this cause on November 8, 2018.

*/s/ Wendell A. Odom, Jr.*
**WENDELL A. ODOM, JR.**